FIRST NATIONAL BANK OF HURON, Respondent, v.
SESSLER et al, Appellants.

(222 N. W. 946.)

(File No. 6271.   Opinion filed December 31, 1928.)

*H. Van Ruschen,* of Salem, and *Ueland & Ueland,* of Minneapolis, Minn., for Appellant.

*Null & Royhl,* of Huron, and *C. H. McCay,* of Salem, for Respondents.

MISER, C. This appeal is from an order approving a receiver's report and account. The receiver was appointed in an action in which respondent First National Bank was plaintiff and in which appellant, together with Louis M. Sessler, Annie Sessler, E. R. Geiger, D. Goldsmith, Commercial State Bank and James Valley Bank were defendants. In said action, the court found the facts, so far as pertinent to this appeal, to be as follows: About January 14, 1921, Louis M. Sessler was indebted to Commercial State Bank in the sum of about $70,000. On that day and as security for that indebtedness defendants Sessler conveyed by warranty deed to defendants Geiger and Goldsmith, trustees, three lots in the city of Salem and a half section of land in McCook county. The deed recited that it was subject to the terms and conditions of a written agreement, contemporaneous therewith, between the grantors and Commercial State Bank. This deed was duly recorded on January 17, 1921; and, on March 9, 1922, the register of deeds certified of record that $70,000 was the amount secured thereby, and that he had collected $350 registry tax thereon. In the contemporaneous agreement referred to in the deed, it was recited that title to said land was conveyed only for the purpose of securing the payment of notes constituting said indebtedness and the renewals of such notes. Thereafter, on January 27th, 1923, the Sesslers executed and delivered to defendant Gold-

smith a warranty deed in consideration of $1 and other good and valuable considerations, conveying legal title to said real estate. It recited that the real estate therein conveyed was subject to the indebtedness secured by the deed of January 14, 1921, to said Geiger and said Goldsmith, trustees, as well as a $20,000 mortgage prior thereto, which indebtedness and mortgage the grantee assumed and agreed to pay. Thereafter, on February 13, 1923, in the circuit court of McCook county, appellant Midland National Bank secured judgment against defendant Goldsmith, and thereafter levied upon and sold the lots. On August 21, 1924, a sheriff's deed issued to appellant. On October 1, 1925, the notes secured by the trust deed amounted to in excess of $94,000, some being owned by respondent, some by appellant, and the balance by other banks, to all of whom they had been rediscounted by Commercial State Bank. The notes rediscounted to appellant were indorsed personally by defendants Geiger and Goldsmith, who were respectively cashier and president of Commercial State Bank. The court found, also, that defendant Goldsmith held the title to the lots in trust for the creditors of Sessler, that all of the premises were of insufficient value to pay the debts of Sessler, and that, by reason thereof, Goldsmith had no personal interest in the premises at the time of the execution sale.

Thereupon the court concluded that, by the deed executed by the Sesslers to Goldsmith on January 27, 1923, the trust created by the trust deed of January 14, 1921, was not discharged, but a new liability was imposed upon Goldsmith to pay the trust obligations; that, by the sheriff's deed to the Midland National Bank, appellant acquired only the personal interest of Goldsmith in the premises; and said: "The title or interest so acquired is subject to the said trust and all the indebtedness secured thereby." The court also found, as a matter of law, that insurance premiums paid by appellant were paid as owner, and therefore appellant was not entitled to recover the same from the trust property, and that the taxes paid by the Commercial State Bank were paid in protecting the trust property, and therefore the bank was entitled to reimbursement therefor.

Pursuant to this decision, it was adjudged by decree made and entered November 1, 1925, that a trust was created by the deed of January 14, 1921, to secure the Sessler indebtedness, which, on

October 1, 1925, amounted to over $94,000, over $27,000 of which was to respondent, over $6,000 to appellant, and the balance to other banks named therein. This decree recited that any right, title, or interest held by appellant Midland National Bank was subject to and inferior to the rights of plaintiff and other owners of indebtedness intended to be secured by the trust, and ordered the property to be sold at sheriff's sale, and, out of the proceeds of the sale, to pay the costs, all unpaid taxes, and pay over the balance to the clerk of the court to be held subject to the further order of the court; and, by said decree, jurisdiction was reserved for the entry of such further decree as might be necessary to distribute the said funds so paid to the clerk.

No appeal was taken from said decree nor from the order theretofore made on the 12th day of November, 1924, appointing respondent Gregory receiver; but, on March 23, 1926, on a showing that no sale had been made as provided in the order of November 1, 1925, appellant obtained an order requiring the receiver to file a report of his receipts and disbursements. The receiver made such report. Appellant filed exceptions thereto. The court approved the report. It is from the order so approving the report that this appeal is taken.

In the order appealed from, the receiver was authorized to reimburse himself for fire and tornado insurance premium paid and to pay the taxes so far as the moneys in his hands would pay the same. Appellant contends that the order deprives appellant, as successor in interest of the mortgagor, of the rents, profits, and possession of the real estate during the period of redemption, and places on appellant the entire burden of paying the taxes, insurance premiums, repairs, and other expenditures.

Respondents contend, however, that when Goldsmith, who was already one of the trustees named in the trust deed of January 14, 1921, received from the Sesslers the warranty deed dated January 27, 1923, all the interest or rights the Sesslers theretofore had in the property inured to the benefit of the trust; that among these rights were the rights to the possession of the property and to the rents and profits therefrom; that, when appellant sold the lots under an execution against Goldsmith as an individual, the beneficiaries of the trust were not thereby deprived of, nor did appellant by his sheriff's deed to the lots acquire, the right to the possession of and the rents and profits from the lots.

■ In view of those portions of the trial court's findings, conclusions, and judgment heretofore set forth, and from which no appeal has been taken, and particularly those parts of the judgment wherein it was adjudged that any right, title or interest of appellant was "subject to and inferior to the rights of the plaintiff and other owners of the indebtedness secured or intended to be secured by said instruments and the trust created by said instruments," and that appellant and other defendants were thereby "saving to them only the right of redemption, forever foreclosed of any and all right, claim or interest in or to said real property," it would appear that the court intended to adjudge that appellant, by its purchase on execution sale of Goldsmith's interest in the property, acquired—as it expressly found in its conclusions of law—only the personal interest of Goldsmith subject to the trust.

■■ Such intendment is clearly within the spirit of the law of trusts and within the letter of our statutes which require of a trustee the highest good faith toward his beneficiary (section 1195, R. C. 1919), and which prohibits a trustee from using trust property for his own profit (section 1196, R. C. 1919). The warranty deed of the Sesslers transferred to Goldsmith all their remaining rights in the property. Among these rights were the rights of possession, of the rents and profits, and of redemption. The debts for the payment of which Goldsmith already held the title as trustee being greater than the value of the lots, the highest good faith toward his beneficiaries would have prevented Goldsmith from personally profiting from the possession and from the rents and profits of these lots of which he held the title in trust. That this was the conclusion and judgment of the trial court is supported by the judgment wherein it was held that all that appellant acquired by its execution sale of Goldsmith's personal interest was the right of redemption.

Section 217, Perry on Trusts (6th Ed.), is in part as follows: "It is a universal rule, that if a man purchases property of a trustee, with notice of the trust, he shall be charged with the same trust, in respect to the property, as the trustee from whom he purchased. * * * Having once taken with notice of the trust, he is a trustee in law, and a trustee cannot defeat the interest of his cestui qui trust; on the contrary, all the interest that the trustee, or constructive trustee, shall thus buy in will inure to the benefit of the

title 'for the cestui qui trust." See, also, Pom. Eq. Jur. (4th Ed.) § 1048.

The foregoing statement of the rule is in harmony with section 1219, R. C. 1919, which is as follows: "A trustee can not enforce any claim against the trust property which he purchases after or in contemplation of his appointment as trustee; but he may be allowed, by any competent court, to charge to the trust property what he has in good faith paid for the claim, upon discharging the same."

Appellant, not now having nor ever having had the right to the possession or to the rents and profits of these lots, is not in position to question, as one entitled thereto, the use of the rents and profits by the receiver to pay taxes and insurance premiums. Moreover, appellant has not shown itself to be injured in any way by the order from which the appeal is taken.

The order is affirmed.

BURCH, P. J., and POLLEY and SHERWOOD, concur.

BROWN, J., concurs in result.

CAMPBELL, J., disqualified, and not sitting.